```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
DANIEL CENTENO,

                         Plaintiff,     00 Civ. 6456(DFE)

         - against -                    OPINION AND ORDER

CITY OF NEW YORK, STEVEN BROWN,
MICHAEL BANKS and ANTHONY CAFFERTY,

                         Defendants.

------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

PELIMINARY STATEMENT

In March 2002, I received a very short stipulation signed by plaintiff's then attorney (Michael R. Bressler) and by the City's attorney (Jennifer Rossan). The stipulation said: "Plaintiff agrees to discontinue this matter without prejudice and costs to either party." I so ordered the stipulation and closed the case.

On December 30, 2005, a new attorney (John N. McPadden) filed a motion to vacate the stipulation and order of discontinuance. He annexed an 8-page memorandum of law, a 3-page affidavit from plaintiff, and Plaintiff's Exhibits A through F.

On March 6, 2005, Ms. Rossan served an opposing declaration annexing Defendant's Exhibits A through D. Her 15-page memorandum of law made several arguments; most significantly she cited *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999). Townes, like plaintiff in our case, was subjected to an unreasonable seizure and search but his suppression motion was denied and he served more than two years in prison before the Appellate Division reversed his conviction. The Second Circuit dismissed his § 1983 action as a matter of law, and wrote:

> The fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to Townes's conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions.

\*   \*   \*

>    . . . [A]s a matter of law, the unconstitutional
> seizure and search of Townes's person was not a
> proximate cause of his conviction because of (at least)
> one critical circumstance: the trial court's refusal to
> suppress the evidence, which is an intervening and
> superseding cause of Townes's conviction.

*Townes*, 176 F.3d at 145-46 (internal citations omitted).

On May 1, 2006, Mr. McPadden served a 4-page reply memorandum that does not deal with *Townes* but merely makes a conclusory assertion: "Defendant has not shown that plaintiff is unlikely to succeed on the merits. . . ."

On the contrary, the *Townes* precedent precludes the plaintiff in our case from recovering anything, with the possible exception of nominal damages. I decline to hold a hearing to determine exactly why the prior attorney filed the discontinuance, and I deny the motion to reopen this case.

### FACTUAL AND PROCEDURAL BACKGROUND

Mr. McPadden has submitted evidence (Pl. Exh. F) that plaintiff was born on June 13, 1978, that he scored 76 on an IQ test in November 1994, and that he scored 49 on an IQ test in May 1995. The following is gleaned from the Complaint and from two opinions: *People v. Centeno*, 168 Misc.2d 172, 637 N.Y.S.2d 254 (Sup. Ct. N.Y. County 1995) and *People v. Centeno*, 259 A.D.2d 277, 687 N.Y.S.2d 88 (1st Dept. 1999).

On January 3, 1995, at 10:25 p.m., on East 14th Street between Second and Third Avenues, a man cut Timothy King and attempted to steal property from him. Three City police officers (Steven Brown, Michael Banks, and Anthony Cafferty) allegedly witnessed the crime, chased after the perpetrator, and eventually lost sight of him. (637 N.Y.S.2d at 260.) At 10:40 p.m., on East 10th Street between Avenues B and C, Police Officer William Brady detained plaintiff, who stated that he "was coming from Church" and that the police "were always stopping him for this kind of stuff." (*Id*. at 256.) Some sort of "physical evidence [was] recovered from him by the police." (687 N.Y.S.2d at 88.) At 10:45 p.m., he was arrested. (637 N.Y.S.2d at 256.) At Beth Israel Hospital at 11:20 p.m. (less than one hour after the crime) the victim observed plaintiff in a showup and stated that plaintiff "looks like the guy." (*Ibid*.) "[A] little more than an hour after . . . the crime," Officers Brown, Banks and Cafferty came to the hospital and (in a more positive fashion)

identified plaintiff as the perpetrator.  (637 N.Y.S.2d at 260.)

After indictment, plaintiff moved to suppress the physical evidence and the out-of-court identifications.  Justice Harold Rothwax held a hearing and denied suppression.  (I do not have a copy of the suppression decision, but it is referred to in 637 N.Y.S.2d at 256 n. 1, and in 687 N.Y.S.2d at 88.)

After a trial before Justice Joan Sudolnik, the jury, on December 1, 1995, found plaintiff guilty of attempted robbery.  He received a prison sentence of 2 1/3 to 7 years; after serving the 2 1/3 years, he was paroled on March 16, 1998.

On March 4, 1999, the Appellate Division rigorously applied the criminal-law doctrine of "the fruit of the poisonous tree."  It wrote:

> As the People correctly concede, the police lacked reasonable suspicion to stop and detain defendant pending an identification by the victim and three officers who had witnessed the crime.  Since the stop and detention were unjustified, defendant is entitled to suppression of the physical evidence recovered from him by the police and the out-of-court identifications.  We thus remand for an independent source hearing [as to all identifying witnesses] as well as a new trial.

687 N.Y.S.2d at 88.  After that remand, Justice James Yates eventually dismissed the indictment.  (Complaint ¶ 10; plaintiff does not tell me the reasons for the dismissal.)

On December 13, 1999, the City of New York was served with a Notice of Claim that listed Michael R. Bressler as plaintiff's attorney.  (Def. Exh. A.)  On August 29, 2000, Mr. Bressler came to our Court and filed a complaint based on 42 U.S.C. § 1983.  The complaint listed five defendants: the City of New York, District Attorney Robert M. Morgenthau, and Officers Brown, Banks and Cafferty.  The complaint was served on the City, but was never served on any of the police officers.  (Answer fn. 1; 3/6/06 Rossan Decl. ¶¶ 14-15.)

On December 15, 2000, District Attorney Morgenthau moved to dismiss the complaint as to him; Judge Victor Marrero granted that motion on April 26, 2001.  On that date, Mr. Bressler and Ms. Rossan consented, under 28 U.S.C. § 636(c), that all further proceedings in this case would take place before me.  Almost a year later, they signed the stipulation of discontinuance that I "so ordered" on March 19, 2002.

More than three years later, plaintiff, through his new attorney Mr. McPadden, made the instant motion to vacate that stipulation and order. He makes the following allegations:

1. Mr. Bressler submitted the March 2002 stipulation without plaintiff's knowledge or consent.

2. Mr. Bressler never told plaintiff that the lawsuit had been terminated. To the contrary, whenever plaintiff called Mr. Bressler for updates on the progress of his case, Mr. Bressler told him that the case was progressing normally.

3. Almost one year after Mr. Bressler had discontinued the case, he made plaintiff come to his office to sign an affidavit, ostensibly to be filed in this lawsuit. (Pl. Exh. E is now submitted as a copy of that affidavit, which appears to have been notarized by Mr. Bressler on February 19, 2003.)

4. Sometime later in 2003, plaintiff contacted Julia Kuan, his Legal Aid attorney who had represented him in 1999 in the criminal case. He asked her for assistance in determining what was happening with the civil case at bar. In December 2003, Ms. Kuan learned that the case had been voluntarily dismissed. Plaintiff then contacted the law firm of Toberoff, Tessler & Schochet, LLP about getting the action restored, and/or holding Mr. Bressler responsible for his conduct. The Toberoff firm told plaintiff that the statute of limitations had run on his claim and that Mr. Bressler had no malpractice insurance. Plaintiff alleges that the Toberoff firm did not advise him that he could make a motion to vacate. (See Reply Mem., p. 2.)

5. On January 6, 2004, Mr. Bressler was suspended from the practice of law. *In the Matter of Michael R. Bressler*, 3 A.D.3d 71, 770 N.Y.S.2d 303 (1st Dept. 2004). During the Departmental Disciplinary Committee's investigation, Mr. Bressler admitted to the neglect of certain other clients:

> . . . More significantly, [he] also admitted that in one matter he intentionally misled a client into believing that he had commenced an action on the client's behalf in the Southern District, when in fact he had not, and in another case he made multiple false statements to his client to conceal the fact that he had neglected to file the appropriate paperwork to obtain an order of attachment for the client. In addition, his neglect of two other client matters resulted in the dismissal of the clients' complaints, in whole or in part, and in one of those cases the

-4-

> judge sanctioned respondent and the client for failure
> to comply with discovery, resulting in a judgment
> against both respondent and the client.  Respondent did
> not inform the client of this judgment.
>
> In seeking respondent's immediate suspension, the
> Committee asserts that respondent has admitted to the
> neglect of four separate matters in violation of DR 6-
> 101(a)(3), has admitted to conduct involving
> dishonesty, fraud, deceit or misrepresentation in
> violation of DR 1-102(a)(4) and has, in a separate
> matter, failed to maintain client funds in a special
> account in violation of DR 9-102(b)(1).  The Committee
> also notes that respondent has previously been issued a
> letter of admonition on September 26, 2000 for the
> neglect of one client matter, and for conduct that
> adversely reflects on his fitness as a lawyer in
> violation of DR 1-102(a)(7) in another matter.

3 A.D.3d at 72, 770 N.Y.S.2d at 304.  On March 23, 2004, the
Appellate Division accepted Mr. Bressler's resignation from the
practice of law.  *In the Matter of Michael R. Bressler*, 5 A.D.3d
47, 774 N.Y.S.2d 36 (1st Dept. 2004).

     6.  In August 2004, plaintiff saw a newspaper article in the
New York Post detailing how Mr. Bressler had been found liable
for dismissing a different client's case without his consent.
Plaintiff then contacted that client's attorney, Jonathan M.
Landsman, about representing him in the case at bar.  Apparently,
Mr. Landsman and Ms. Rossan had a telephone conversation on April
11, 2005, and Mr. Landsman told her that plaintiff wanted to
vacate the stipulation of discontinuance signed three years
earlier by Mr. Bressler.  (See Mr. Landsman's June 25, 2005
follow-up letter to Ms. Rossan, which is annexed to plaintiff's
5/1/06 reply memorandum.)

     7.  Sometime after June 25, 2005, plaintiff retained Mr.
McPadden and his firm, Talkin, Muccigrosso & Roberts, LLP.

     8.  Plaintiff claims that the stipulation of discontinuance
should be vacated because Mr. Bressler's actions in abandoning
the case amounted to "constructive disappearance."  In the
alternative, plaintiff argues that the case should be reopened on
equitable grounds, because Mr. Bressler did not carry malpractice
insurance and because plaintiff has limited mental capacity and
has been receiving Social Security SSI disability benefits since
his release from prison.  (See Pl. Exh. F.)

Opposing plaintiff's motion, the City makes four arguments:

(a)  Plaintiff failed to show that Mr. Bressler "constructively disappeared."

(b)  Plaintiff failed to move to set aside the stipulation within a reasonable time period.

(c)  Equitable considerations warrant denial of plaintiff's motion; it was made after the statute of limitations had expired, and, in any event, plaintiff could not succeed on the merits in view of the Second Circuit's decision in *Townes*.

(d)  Reinstating plaintiff's claims against the three officers would impose undue hardship and prejudice on them, because, from 1995 through 2005, "none of those individuals have had any notice about plaintiff's civil suit against them."

I find it unnecessary to rule on any of the City's arguments other than the *Townes* case.  As mentioned earlier, Mr. McPadden's reply memorandum fails to deal with *Townes*.

## DISCUSSION

Rule 60(b) of the Federal Rules of Civil Procedure "strikes a balance between serving the ends of justice and preserving the finality of judgments."  *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir. 1986).  Since Rule 60(b) "allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances."  *Ibid* (internal citations omitted).

In a similar case where a different plaintiff had been represented by Mr. Bressler, Judge McKenna granted a Rule 60(b) motion.  *Azzolini v. Marriot Int'l, Inc.*, 2004 WL 360448 (S.D.N.Y. Feb. 25, 2004).  But Judge McKenna wrote at *1:

> Plaintiff's affidavit shows . . . that the case is not frivolous . . . .

By contrast, the case at bar is frivolous.  In view of *Townes*, this lawsuit should not have been filed.  Even if we assume that Mr. Bressler lied to his client and concealed the discontinuance, there is no just reason to revive a case that should not have been filed.  A year before it was filed, the Second Circuit had written:

> . . . The evil of an unreasonable search or seizure is that it invades privacy, not that it

> uncovers crime, which is no evil at all.
>
>       \*   \*   \*
>
> . . . Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy -- including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.

*Townes*, 176 F.3d at 147-48.

Plaintiff does not tell me the nature of "the physical evidence recovered from him by the police." (687 N.Y.S.2d at 278.) If it was a knife or a similar cutting weapon, it may well be that probable cause was established within seconds after Officer Brady detained him. In any event, probable cause was clearly established in less than an hour, when the victim stated that plaintiff "looks like the guy," and Officers Brown, Banks and Cafferty positively identified plaintiff as the person they saw slashing at the victim. (637 N.Y.S.2d at 256 and 260.)

"The fruit of the poisonous tree doctrine . . . is inapplicable to civil § 1983 actions." *Townes*, 176 F.3d at 145. Hence, the "seizure and search of [plaintiff's] person . . . might at most support slight or nominal damages." *Ibid*.

Here, the initial police stop was unreasonable, but the police quickly found physical evidence and obtained identification of plaintiff from four witnesses. The Appellate Division did not denigrate the power of that evidence.

As a matter of law, plaintiff's privacy was unreasonably invaded only until the time when the low threshold of probable cause was established. This took no more than 40 minutes (from 10:40 to 11:20) and perhaps less than one minute (whatever time it took to recover "the physical evidence").

On these facts, plaintiff's claim is, at best, a claim for nominal privacy damages. It is too insignificant to justify reopening this long-dead lawsuit.

## CONCLUSION

For the reasons stated above, I deny plaintiff's motion to vacate the stipulation and order of discontinuance.

*Douglas F. Eaton*

DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175
Fax: (212) 805-6181

Dated:   New York, New York
         September 11, 2006

Copies of this Opinion and Order were sent on this date by mail to:

John N. McPadden, Esq.
Talkin, Muccigrosso & Roberts, LLP
40 Exchange Place, 18th Floor
New York, NY 10005
(also by fax to: 212-482-1303)

Jennifer Rossan, Esq.
Assistant Corporation Counsel
100 Church Street, Room 3-215
New York, New York 10007
(also by fax to: 212-788-9776)